Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

JAN 2 8 2015

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | CRIMINAL NO. |
| v. | § § § | 18 U.S.C. §1040(a)(1) |
| JESSE DUNN, | § § | 18 U.S.C. §1040(a)(2) |
| Defendant. | § § § | 18 U.S.C. §1001 (UNDER SEAL) |

# INDICTMENT

**15-050**

THE GRAND JURY CHARGES THAT:

## COUNT ONE
(Fraud Scheme in Connection with a Major Disaster – 18 U.S.C. §1040(a)(1))

### A.   INTRODUCTION

At all times material to this indictment:

1.   The Small Business Administration (SBA) was an agency of the United States that provided long-term, low-interest loans to businesses and non-profit organizations in the aftermath of a declared disaster. SBA disaster loan proceeds are to be used solely for the repair or replacement of real estate, inventory, supplies, machinery and equipment damaged during a declared disaster. Individuals seeking SBA disaster loans must provide truthful and correct information to the SBA at all phases of the disaster loan process. Recipients of SBA disaster loans must repay the funds to the SBA over the term and at the interest rate designated in the disaster loan promissory note. Recipients of SBA

disaster loans must return to the SBA any disaster loan disbursements not used to replace or repair property damaged by the disaster.

2. Hurricane Ike made landfall on the Texas Gulf Coast on or about September 13, 2008, and former President George W. Bush declared the counties in and around Houston, Texas a major disaster area under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act") that same day.

3. **JESSE DUNN (DUNN)** was the President of Aldine Community Care Center, Inc., ("ACCC") a registered Texas non-profit corporation created on April 29, 2004. **DUNN** also served as the President or Director of several other Texas non-profit corporations, including but not limited to, Paraclete Church Ministries, Inc. ("Paraclete").

4. T.C. was **DUNN's** spouse and was also the Secretary and Treasurer of ACCC and a Director and Secretary of Paraclete Ministries.

5. COMPANY A was a business located in Houston, Texas specializing in roofing and other property restoration services.

6. COMPANY B was a construction services business located in Houston, Texas specializing in HVAC, plumbing and electrical work.

7. COMPANY C was a business located in Milwaukee, Wisconsin

specializing in providing equipment and furnishings to Senior Living facilities.

8. Company D was a business located in Houston, Texas specializing in providing grocery and meal delivery services.

## B. THE SCHEME TO DEFRAUD

9. Beginning in or about September 2008, and continuing through December 2010, in the Southern District of Texas and elsewhere, the defendant, **JESSE DUNN**, did falsify, conceal or cover up by trick, scheme or device one or more material facts in connection with benefits authorized, transported, transmitted, transferred, disbursed or paid in connection with a major disaster declaration under section 401 of the Stafford Act, to wit: **DUNN** falsely represented to SBA that certain disaster repair or replacement services or merchandise had been obtained and paid in full, and that certain liens had been satisfied, when in fact the services or merchandise had not been received or paid in full and the liens had not been satisfied, all in order to fraudulently induce the SBA into making additional disaster loan disbursements which **DUNN** used in part to enrich himself and to support his own lifestyle.

C.     **MANNER AND MEANS OF THE SCHEME TO DEFRAUD**

It was part of the scheme to defraud that:

10.    **DUNN** would and did submit an SBA disaster loan application wherein he agreed to submit truthful and correct information to the SBA at all phases of the SBA disaster loan process.

11.    **DUNN** would and did enter into an SBA loan authorization and agreement wherein he agreed to use all SBA disaster loan proceeds solely to repair or replace property damaged or destroyed by Hurricane Ike.

12.    **DUNN** would and did enter into an SBA loan authorization and agreement wherein he agreed to return to the SBA any disaster loan proceeds not used to repair or replace property damaged or destroyed by Hurricane Ike.

13.    **DUNN** would and did execute promissory notes wherein he agreed to repay the SBA disaster loan at a set interest rate over a particular period of time.

14.    **DUNN** would and did obtain quotes or invoices from contractors purportedly for disaster repair and replacement services and merchandise and would then falsely submit the invoices and quotes to the SBA as received and paid in full when in fact he had not received the services or merchandise or had not paid in full.

15. **DUNN** would and did submit fraudulent and fictitious documents to the SBA, including but not limited to checks purportedly drawn on his bank account, falsely reflecting the satisfaction of liens on the damaged property when in fact the liens were not satisfied.

16. **DUNN** would and did use a significant portion of the SBA disaster loan proceeds not to repair or replace property damaged as a result of Hurricane Ike, but instead to enrich himself and to support his own lifestyle.

D.    **ACTS IN FURTHERANCE OF THE SCHEME TO DEFRAUD**

17. In furtherance of the scheme to defraud, the following acts, among others, were committed in the Southern District of Texas and elsewhere:

(1) On or about September 25, 2008, **DUNN** submitted a Disaster Business Loan Application to the SBA on behalf of ACCC.

(2) On or about December 16, 2008, **DUNN** executed a promissory note with the SBA, wherein he agreed to repay the SBA $995,400 over 25 years at a 4% interest rate.

(3) On or about December 16, 2008, **DUNN** opened Bank of America account xxx-4166 in the name of Paraclete Ministries, Inc., dba ACCC, and was the sole signatory on the account.

(4) On or about December 20, 2008, **DUNN** signed a loan authorization and agreement wherein he promised to use the $995,400 in SBA disaster loan proceeds solely to repair or replace property located at 301 York St., South Houston, Texas 77587 and 10110 Airline Drive, Houston, Texas 77037 that had been damaged by Hurricane Ike.

(5) On or about February 18, 2009, **DUNN** executed an electronic funds transfer request, authorizing the SBA to deposit disaster loan proceeds into **DUNN's** Bank of America account xxx-4166.

(6) On or about February 20, 2009, **DUNN** caused the SBA to make the first disaster loan disbursement in the amount of $250,000 into **DUNN's** Bank of America account xxx-4166.

(7) On or about February 20, 2009, **DUNN** wrote a $200,000 check to COMPANY A, with the words "Roofing Repair/Replacement" in the memo line.

(8) On or about February 20, 2009, **DUNN** caused COMPANY A to issue a $200,000 check back to ACCC with the word "Donation" in the memo line.

(9) On or about March 11, 2009, in an effort to induce the SBA into making additional disaster loan disbursements, **DUNN** faxed the SBA an invoice from COMPANY A (#022009) falsely indicating that **DUNN** had made a legitimate $200,000 payment to COMPANY A on February 20, 2009.

(10) On or about April 10, 2009, **DUNN** caused the SBA to make the second disaster loan disbursement in the amount of $160,000 into **DUNN's** Bank of America account xxx-4166.

(11) On or about April 16, 2009, **DUNN** transferred approximately $80,000 in SBA disaster loan proceeds from DUNN's Bank of America account xxx-4166 to Bank of America account xxx-4179 in the name of ACCC for which **DUNN** was the sole signatory.

(12) Between on or about April 20, 2009, through May 5, 2009, **DUNN** and T.C. withdrew from his Bank of America account xxx-4179 approximately $20,544 at L'Auberge du Lac Casino (L'Auberge) in Lake Charles, Louisiana, using some portion of the SBA disaster loan funds originally transferred from **DUNN's** Bank of America account xxx-4166.

(13) On April 23, 2009, in an effort to induce the SBA into making additional disaster loan disbursements, **DUNN** faxed the SBA an invoice from COMPANY A (#022409) falsely indicating that **DUNN** had made a $248,673

payment to COMPANY A on February 20, 2009.

(14) On or about May 6, 2009, **DUNN** caused the SBA to make the third disaster loan disbursement in the amount of $465,000 into **DUNN's** Bank of America account xxx-4166.

(15) On May 11, 2009, **DUNN** withdrew from his Bank of America account xxx-4166 approximately $47,080 at L'Auberge in Lake Charles, Louisiana, a substantial portion of which constituted SBA disaster loan proceeds.

(16) Between on or about May 11, 2009, through June 8, 2009, **DUNN** made withdrawals from his Bank of America accounts xxx-4166 and xxx-4179 totaling approximately $181,617.64 at L'Auberge and Coushatta Casino (Coushatta) in Lake Charles, Louisiana, a substantial portion of which constituted SBA disaster loan proceeds.

(17) On or about January 28, 2010, in an effort to induce the SBA into sending additional disaster loan disbursements, **DUNN** submitted to the SBA four fictitious invoices falsely indicating that he had paid $19,681.36 for services performed by Company B when in reality Company B had not performed those services at 10110 Airline Drive, Houston, Texas 77037 and **DUNN** had not paid Company B for those services.

(18) On or about February 1, 2010, **DUNN**, signed an amended promissory note with the SBA, increasing his loan amount to $1,310,300 to be repaid over 28 years at 4% interest and adding Paraclete as an additional borrower.

(19) On or about February 1, 2010, **DUNN** submitted a fictitious purchase order to the SBA falsely indicating that **DUNN** had purchased replacement equipment worth approximately $60,020.29 from COMPANY C when in reality he had not purchased replacement equipment from COMPANY C.

(20) On or about February 23, 2010, **DUNN** executed an electronic funds transfer request, authorizing the SBA to deposit disaster loan proceeds into Chase Bank account xxx-0079 in the name of ACCC for which **DUNN** was the sole signatory.

(21) On or about May 6, 2010, **DUNN** caused the SBA to make the fourth disaster loan disbursement in the amount of $120,400 into **DUNN's** Chase Bank account xxx-0079.

(22) On or about April 14, 2010, in an effort to induce the SBA into sending additional disaster loan disbursements, **DUNN** submitted to the SBA a copy of check #1091, purportedly drawn on **DUNN's** Chase Bank account xxx-0079, falsely indicating that ACCC had satisfied a lien on ACCC's property by COMPANY D when in reality **DUNN** never submitted check #1091 to pay off

the lien.

(23) On or about April 14, 2010, in an effort to induce the SBA into sending additional disaster loan payments, **DUNN** submitted to the SBA a copy of check #1093, purportedly drawn on **DUNN's** Chase Bank account xxx-0079, falsely indicating that ACCC had satisfied a Spring Independent School District (SISD) tax lien on ACCC's property, when in reality **DUNN** never submitted check #1093 to satisfy the SISD taxes.

(24) On or about April 15, 2010, in an effort to induce the SBA into sending additional disaster loan payments, **DUNN** submitted to the SBA a copy of check #s 1096 and 1097, purportedly drawn on **DUNN's** Chase Bank account xxx-0079, falsely indicating that ACCC had satisfied a lien by Reliant Energy on ACCC's property, when in reality **DUNN** never submitted check #s 1096 and 1097 to satisfy the Reliant Energy lien.

(25) On or about April 30, 2010, **DUNN** submitted a loan payment to the SBA in the amount of $6,518, which was later returned for insufficient funds.

(26) On or about May 11, 2010, **DUNN** submitted a loan payment to the SBA in the amount of $13,036, which was later returned for insufficient funds.

(27) On or about May 13, 2010, **DUNN** caused the SBA to make the fifth disaster loan disbursement in the amount of $240,450 into **DUNN's** Chase Bank account xxx-0079.

(28) On or about May 13, 2010, T.C. withdrew $203,000 from **DUNN's** Chase Bank account xxx-0079, a substantial portion of which constituted SBA disaster loan proceeds.

(29) On or about May 20, 2010, **DUNN** submitted a fictitious purchase order to the SBA falsely indicating that DUNN had purchased replacement furniture worth approximately $50,398.68 from COMPANY C when in reality he had not purchased replacement furniture from Company C.

(30) On or about June 2, 2010, **DUNN** faxed invoice #022409 to the SBA with a notation that payment in the amount of $248,673 was received by COMPANY A on February 20, 2009, when in fact payment in that amount was not made to COMPANY A at that time.

(31) On or about June 4, 2010, **DUNN** caused the SBA to make the sixth disaster loan disbursement in the amount of $69,950 into **DUNN's** Chase Bank account xxx-0079.

(32) On or about June 7, 2010 through June 21, 2010, **DUNN** withdrew approximately $14,534 from his Chase Bank account xxx-0079 from

ATMs located at Delta Downs Racetrack and L'Auberge in Lake Charles, Louisiana, a substantial portion of which constituted SBA disaster loan proceeds.

(33) On or about June 14, 2010 through June 17, 2010, T.C. withdrew approximately $26,933 from **DUNN's** Chase Bank account xxx-0079, a substantial portion of which constituted SBA disaster loan proceeds.

All in violation Title 18, United States Code, Section 1040(a)(1).

## COUNTS TWO THROUGH SEVEN
### (False Representations in Connection With Major Disaster – 18 U.S.C. § 1040(a)(2))

18. Section A of Count One of this Indictment is re-alleged and incorporated as though fully set forth herein.

19. On or about the dates set forth below, in the Southern District of Texas, and elsewhere, **JESSE DUNN**, did knowingly make a materially false, fictitious, or fraudulent statement or representation in connection with $1,305,800 in disaster loan benefits authorized, transported, transmitted, transferred, disbursed or paid by the SBA in connection with Hurricane Ike, a declared major disaster under section 401 of the Stafford Act:

| Count | Date | Fraudulent Representation |
|---|---|---|
| 2 | 1/28/10 | Submission of invoices falsely indicating to the SBA that ACCC had paid $19,681.36 for services from COMPANY B |
| 3 | 2/1/10 | Submission of invoice falsely indicating to the SBA that ACCC had purchased $60,020.09 in merchandise from COMPANY C |
| 4 | 4/14/10 | Submission of check # 1091 from Chase Bank account xxx-0079 falsely indicating to the SBA that ACCC had satisfied the lien by COMPANY D |
| 5 | 4/14/10 | Submission of check # 1093 from Chase Bank account xxx-0079 falsely indicating to the SBA that ACCC had satisfied the lien by SISD |
| 6 | 4/15/10 | Submission of check #s 1096 and 1097 from Chase Bank account xxx-0079 falsely indicating to the SBA that ACCC had satisfied the lien by Reliant Energy |
| 7 | 5/21/10 | Submission of invoice falsely indicating to the SBA that ACCC had purchased $50,398.69 in merchandise from COMPANY C |

All in violation of Title 18, United States Code, Section 1040(a)(2).

## COUNT EIGHT
### (False Statement – 18 U.S.C. § 1001)

21. Section A of Count One of this Indictment is re-alleged and incorporated as though fully set forth herein.

22. On or about September 23, 2008, in the Southern District of Texas, **JESSE DUNN**, did knowingly and willfully, in a matter within the jurisdiction of the SBA, make and use a false document, knowing that the document was materially false, fictitious or fraudulent in order to obtain $1,305,800 in disaster loan

disbursements from SBA, to wit: DUNN submitted a Disaster Business Loan Application to the SBA which falsely stated that he was never charged or arrested for any criminal offense other than a minor vehicle violation, including offenses which have been dismissed.

In violation of Title 18, United States Code, Section 1001.

**A TRUE BILL**

Original Signature on File

_____
FOREPERSON OF THE GRAND JURY

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
SUZANNE ELMILADY
Assistant United States Attorney
(713)567-9000

By: _____
ANDREW LEUCHTMANN
Assistant United States Attorney
(713)567-9000